No. 81.—JOHN HARDEN AND WIFE *et al.* plaintiffs in error, *vs.* WILEY E. MANGHAM, executor, &c. defendant in error.

[1.]  C H, by one of the clauses of her will, bequeathed certain negro slaves, as follows: "As manumission is, by the laws of the State, forbidden, (which I could have wished otherwise,) I will and bequeath to Wiley E. Mangham, my trusty and faithful servants, Charity and Starling, to have and to hold unto him and his executors forever, in fee, with the very urgent request that he and they will treat said negroes kindly and affectionately, and watch over and protect them—finding them a comfortable home, and allowing them as many privileges and liberties as the laws of the State will permit negro slaves to possess or enjoy :" *Held*, that such bequest was not in conflict with the laws of our State, prohibiting manumission.

Caveat, in Pike Superior Court. Tried before Judge STARK, April Term, 1855.

Mrs. Christiana Hall died, having first made and published her last will and testament, appointing Wiley E. Mangham

her executor. The 5th item of said will reads as follows: " As manumission is, by the laws of the State, forbidden, (which I could have wished otherwise) I will and bequeath unto Wiley E. Mangham, my trusty and faithful servants, Charity and Starling, to have and to hold unto him and his executors forever, in fee, with the very urgent request that he and they will treat said negroes kindly and affectionately, and watch over and protect them—finding them a comfortable home, and allowing them as many privileges and liberties as the laws of the State will permit negro slaves to possess or enjoy."

When the will was propounded for probate, plaintiffs in error, heirs at law of Mrs. Hall, caveated the same upon the following, among other grounds:

" Because, said instrument in writing is in violation of the laws of this State, enacted against the manumission of slaves." On the trial, Counsel for caveators asked the Court "to declare and charge the Jury, that the fifth item of said will was void, and rendered the whole of the will void, being illegal and in fraud of the laws of the State;" which charge the Court refused to give, and Counsel for caveators excepted.

O. C. GIBSON, for plaintiffs in error.

H. & J. G. GREEN; MARTIN, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] If the words used by the testatrix in the bequest of these slaves to Wiley E. Mangham, were considered without reference to any question as to manumission, there could be no doubt that the conclusion would instantly be, that the effect of them was to create a fee simple title in Mr. Mangham.

The testatrix says: "I will and bequeath unto Wiley E. Mangham my trusty and faithful servants, Charity and Starling, to have and to hold unto him and his executors forever,

Harden and Wife *et al.* *vs.* Mangham, ex'r, &c.

in fee." And then she couples with the bequest a request, that they shall be indulgently treated, &c.

Now it is true that the gift is to Mr. Mangham *and his executors*, and not to his heirs, representatives and assigns, which is the more formal and usual method of conveyances in fee. But such a conveyance as that before us, by our laws, and especially by the second section of the Act of December 21st, 1821, standing by itself, would be held to vest an absolute, unconditional fee simple estate in the person to whom the same was executed. Is there any thing in this will, going to show that "a less estate" was intended to be "mentioned and limited in the bequest?"

On the contrary, we think that the above language, with its context, clearly manifests an intention to give the negroes absolutely, and as slaves, to Mr. Mangham, and not in trust to him, as is insisted. 1. The testatrix recognized the fact, that manumission is forbidden in our State, and says, that as she cannot manumit them, she will " give and bequeath them to Wiley E. Mangham," &c. 2. She gives the negroes to him, "to have and to hold unto him and his executors forever, in fee." Thus, in the employment of the words, " forever, in fee," using apt words for the creation of an absolute estate. 3. In adding a request for their kind treatment, she recognizes the right of Mr. Mangham to possess and control these negroes, by asking that he will treat said negroes kindly, &c. "*allowing* them as many privileges and liberties as the laws of the State will permit," " watch over and protect them," "*finding* them comfortable homes,"[1] &c. 4. She asks that he will allow them as many privileges, &c. "as the laws of the State will permit *negro slaves* to enjoy." Thus, also, recognizing their *status* in his possession, as that of slaves.

These are, substantially, the provisions of the will on this subject; and whilst they indicate, plainly, a desire, that in consideration of their faithful services, these slaves should be treated with all the humanity and indulgence which the laws would permit, they, at the same time, manifest an intention to convey the slaves, absolutely and in fee simple, to Mr.

Mangham; and consequently, are not in conflict with our laws prohibiting manumission.

The Act of 1818 declares—1. That every instrument in writing, *whether by way of trust or otherwise, made and executed for the purpose of effecting, or endeavoring directly to effect, manumission of a slave or slaves, shall be null and void.* 2. *That such instruments, executed for the purpose of effecting, or endeavoring to effect, manumission, indirectly and virtually, by allowing and securing to such.slave or slaves the right or privilege of working for him, her or themselves, free from the control of the master or owner of said slaves, or of enjoying the profits of his, her or their labor and skill, shall be void.*

We have shown that this testatrix has not used words which manifest an intention to effect the manumission of these slaves *directly.* And we have also shown, that she has not *indirectly* done this, by so bequeathing them that they might be free from the control of a master, and enjoy the profits of their labor, but has recognized the right of their master, to whom she has given them, to control and use them as slaves, by requesting that he would *allow* them such privileges, &c. as the law would permit *negro slaves* to enjoy.

It follows, that these slaves were bequeathed to Mr. Mangham in fee simple; are his property; may descend to his heirs, and may be alienated by him, or sold for his debts.

It is true, that he takes them subject to the strong moral obligation which the terms and character of the gift impose upon him; for the proper discharge of which, he is responsible only to his conscience and his Maker.

To give the construction insisted on by the plaintiff in error to such a will as this, would be, in effect, to hold that the owner of slaves, aged and infirm it might be, to whom he was attached by the pleasant memories of childhood, by the holy emotions of gratitude for long and faithful services to himself and his family, by the ties of a life-time association, in contemplation of his dying hour, could not make, without violation of law, some provision for the purpose of saving them from be-

ing subjected to the chances of coming into the hands of strangers or of hard task-masters, by bequeathing them to some friend, of such means and character as would serve to give assurance of their future kind treatment, and by requesting that such friend, whilst controlling and holding them as slaves, would extend to them such privileges and indulgence as were compatible with law. We repudiate such a doctrine.

Let the judgment be affirmed.